UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
CHARLENE-PAIGE FULLER,                        )
                    Plaintiff,                )
v.                                            )          CIVIL ACTION NO. 14-cv-14168
                                              )
CAROL HIGGINS O'BRIEN, CHRISTINE              )
M. VERDINI, RAYMOND W.                        )
MARCHILLI, JR., COLETTE M.                    )
GOGUEN, THOMAS E. DICKHAUT,                   )
JOHN FLOWERS, MHM                             )
CORRECTIONAL SERVICES, INC.,                  )
MASSACHUSETTS PARTNERSHIP FOR                 )
CORRECTIONAL HEALTHCARE,                      )
LINDA ALBOHN, MEAGHAN DUPUIS,                 )
SHARLENE SULLIVAN, JOEL T.                    )
ANDRADE and ROBERT DIENER,                    )
                    Defendants.               )
_____            )

## JOINT STATEMENT PURSUANT TO
## FED. R. CIV. P. 26(f) AND LOCAL RULE 16.1(d)

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Rule 16.1 of the Local

Rules of the United States District Court for the District of Massachusetts, Plaintiff Charlene-

Paige Fuller; Defendants Carol Higgins O'Brien, Christine M. Verdini, Raymond W. Marchilli,

Jr., Colette M. Goguen, Thomas E. Dickhaut, and John Flowers ("DOC Defendants"); and

Defendants MHM Correctional Services, Inc., Massachusetts Partnership for Correctional

Healthcare, Linda Albohn, Meaghan Dupuis, Sharlene Sullivan, Joel T. Andrade, and Robert

Diener ("MPCH Defendants"), through their respective attorneys, conferred by telephone on

May 28, 2015.  As a result of that conference, the parties hereby present their proposed Joint

Discovery Plan and Pretrial Schedule.

## I.      PRELIMINARY STATEMENT OF THE CASE

### A.      Ms. Fuller's Position

Plaintiff Charlene-Paige Fuller is an inmate diagnosed with Gender Identity Disorder

("GID") who has been serving a life sentence since 1979 in the custody of the Massachusetts

Department of Correction ("DOC"), currently at the North Central Correctional Institute at

Gardner ("NCCI-Gardner").  The Massachusetts Partnership for Correctional Health ("MPCH")

was contracted by the DOC to provide mental health services, including at NCCI-Gardner.  Ms.

Fuller alleges that, consistent with a long history of unconstitutional treatment of transgender

inmates, Defendants have deprived her of constitutionally adequate medical treatment for her

GID.

From December 2011 to March 2013, Ms. Fuller was allowed to feminize her

appearance, express her gender identity, and openly wear bras with bra padding.  The ability to

wear bras with padding is far from trivial—it is a treatment option recommended in the World

Professional Association for Transgender Health ("WPATH") Standards of Care, and is in fact

vital to Ms. Fuller's medical care, especially since Ms. Fuller does not receive hormones or have

surgically augmented breasts.  Ms. Fuller wore her bras with bra padding with the full

knowledge of DOC management and mental health officials.  The DOC's Gender Identity

Disorder Treatment Committee as well as Ms. Fuller's then-Primary Care Clinician recorded the

positive outcome of such treatment.  The DOC then abruptly withdrew Ms. Fuller's authorization

to feminize in March 2013, causing Ms. Fuller intense mental anguish and physical harm.

Despite the fact that Defendants supervised the administration of this medically necessary care

for more than a year—consistent with medical protocol, without incident, and to Ms. Fuller's

significant and well-documented benefit—the DOC and MPCH today continue to withhold such

treatment.

Because of the Defendants' deliberate indifference to her serious medical need, and failure to provide adequate medical care, after exhausting her administrative remedies, on November 14, 2014, Ms. Fuller filed a Complaint with this Court alleging violations of the Eighth Amendment, among other claims.  Dkt. 1.  On November 17, 2014, she filed a motion for preliminary injunction, arguing that she has been experiencing and will continue to experience daily irreparable and immediate harm as a result of the DOC's and MPCH's unconstitutional treatment.  Dkt. 7.  Ms. Fuller is not the first transgender inmate to seek an injunction in order to compel the DOC to provide medically necessary treatment.  In recent years, the DOC has been subject to a series of similar orders from other GID inmates in its custody.  *See Brugliera v. Commissioner of Mass. Dep't of Corr.*, No. 07-40323-JLT, 2009 U.S. Dist. LEXIS 131002, at *1 (D. Mass. Dec. 16, 2009) (entering preliminary injunction ordering DOC to provide inmate with hormone therapy as treatment for her GID); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 252 (D. Mass. 2012) (entering permanent injunction requiring "consistent and timely ongoing treatment for her gender identity disorder in accordance with the Standards of Care promulgated by the World Professional Association for Transgender Health and applicable community standards"); *cf. Norsworthy v. Beard*, No. 14-CV-00695-JST, 2015 WL 1500971, at *20, *22 (N.D. Cal. Apr. 2, 2015) (granting preliminary injunction in light of Plaintiff's "'excruciating' 'psychological and emotional pain' as a result of her gender dysphoria" and ordering Defendants "to provide Plaintiff with access to adequate medical care … as promptly as possible").

Ms. Fuller seeks an order from this Court compelling the DOC and MPCH to provide medically necessary care for her GID, including the ability to feminize through wearing bras with padding, which is the only way that she can adopt an authentic body that accords with her gender identity.

### B.      The DOC Defendants' Position

Plaintiff was diagnosed with GID NOS (Not Otherwise Specified) in 2008.     Plaintiff receives treatment for gender dysphoria in the form of psychotherapy and access to the same clothing and cosmetics available to females in DOC custody.   While plaintiff can have access to hormone therapy, if determined to be clinically appropriate and medically necessary, to date, plaintiff has indicated that she is not seeking treatment with hormone therapy.   The treatment provided for plaintiff's gender dysphoria meets the requirements of the Eighth Amendment.

The DOC contracts with private vendors to provide medical, dental and mental health services to inmates within the Department's custody.   The medical and mental health service providers are responsible for determining the actual type, timing, and level of the medical and mental health care provided to inmates.   MHM Correctional Services, Inc. ("MHM") was the DOC's contract mental health services provider from July 1, 2007 through June 30, 2013. On July 1, 2013, the Massachusetts Partnership for Correctional Health, Inc. ("MPCH") became the DOC's contract medical and mental health services provider.

Treatment for inmates diagnosed with GID is set out in the DOC's GID policy, 103 DOC 652.00 (2012) et seq., Identification, Treatment and Correctional Management of Inmates Diagnosed with Gender Identity Disorder.  The GID policy provides that each inmate diagnosed with GID is assigned a qualified mental health professional (Primary Care Clinician ("PCC")) who is responsible for case management and the provision of direct treatment services.   103 DOC 652.01.   The GID policy established a GID Clinical Supervision Group and a GID Treatment Committee for purposes of monitoring the treatment of inmates diagnosed with GID. The role of the GID Treatment Committee is to review each GID treatment plan and proposed treatment recommendations to ensure clinical appropriateness and medical necessity.

An individualized treatment plan providing medically necessary treatment for each GID inmate is prepared by the inmate's PCC in consultation with the GID Clinical Supervision Group. 103 DOC 652.06(A)(1). Treatment plans "should be focused on the inmate's individualized needs based upon the provision of adequate medical care utilizing prudent, professional standards. …" 103 DOC 652.06(A)(1). The cross-gender clothing and cosmetic items available to inmates diagnosed with GID (male to female) include: bras, sport bras, women's briefs, dusters, lipstick, eyebrow pencil, hair color, hair remover, foam rollers, and women's clothing and footwear. However, neither females in DOC custody nor inmates diagnosed with GID are permitted to purchase or wear padded bras or breast pads based on concerns for safety and security.

Here, plaintiff is unable to point to a recommendation by the DOC's mental health provider requiring access to padded bras or breast pads as medically necessary treatment for her gender dysphoria. Neither plaintiff's PCCs, nor the GID Clinical Supervision Group, nor the GID Treatment Committee, have recommended that plaintiff have access to padded bras or breast pads as clinically appropriate and medically necessary treatment for gender dysphoria. Even the Declaration of Dr. Zakai, cited by plaintiff in support of her claim, does <u>not</u> recommend that plaintiff have access to padded bras or breast pads.

It is well established that an inmate is not entitled to the medical care of his choice. <u>See United States v. DeCologero</u>, 821 F.2d 39, 43 (1st Cir. 1987). Here, plaintiff's Eighth Amendment claim boils down to her disagreement with the mental health providers regarding what is medically necessary treatment for her gender disorder, a claim that falls far short of the constitutional threshold. <u>See</u> <u>Kosilek v. Spencer</u>, 774 F.3d 63, 91-92 (1st Cir. Dec. 16, 2014) (en banc) (choice between two alternative treatment plans developed by competent professionals

does not rise to a constitutional violation), <u>cert</u>. <u>denied</u>, __ U.S. __ (May 4, 2015).  Since plaintiff is receiving adequate treatment for a gender disorder pursuant to a treatment plan developed by competent mental health professionals, she is not entitled to the relief requested and her complaint should be dismissed.  *Id.* at 96 ("The Eighth Amendment, after all, prescribes only medical care so unconscionable as to fall below society's minimum standards of decency.")

### C.      The MPCH Defendants' Position

The crux of the Plaintiff's complaint is that she is not being provided with adequate medical care for her Gender Identity Disorder in the way of breast padding for her bras and that she is not allowed to feminize outside of her cell by wearing breast padding, or otherwise feminize her appearance outside of her cell.  Plaintiff alleges that as a result of the Defendants' actions her civil rights were violated, and continues to be violated, pursuant to 42 U.S.C. § 1983, as a result of deliberate indifference to her serious medical needs, disparate treatment on the basis of her gender, identity, sex and/or GID diagnosis, as well as under G.L. c. 12 § 11I.

The Plaintiff rests her Eighth Amendment claim on the incorrect assertion that the DOC fails to provide Ms. Fuller with the medical treatment that its own chief psychiatrist recommended, and because Ms. Fuller's mental health clinicians openly refuse to provide this care absent a court order, and regardless of her individualized need [her] claimed eighth amendment violations are likely to succeed on the merits….".  (**Plaintiff's PI memorandum at pg. 11**)   The flaw in the Plaintiff's argument, and the reason why her claimed Eighth Amendment violation is unlikely to succeed on the merits, is due to the fact that the chief psychiatrist, cited by the Plaintiff, **never** recommended breast pads as part of Ms. Fuller's treatment plan, or found them to be medically necessary to her treatment.

In his 2008 evaluation, Dr. Zakai diagnosed Ms. Fuller with GID NOS (Not Otherwise Specified). ))  As a result of this diagnosis, Dr. Zakai created a treatment plan for Inmate Fuller

which recommended that she be allowed access to female canteen items and that she be allowed to express her femininity in the milieu. Dr. Zakai specifically states, in his 2008 recommendations, that **the specifics of appropriate expression should be explored in therapy**. Dr. Zakai's plan did not make specific recommendations as to what he believed was medically appropriate at that time including Ms. Fuller's access to breast padding.

It is the MPCH Defendants' position that bra pads are not medically necessary, and that Ms. Fuller's current treatment plan (in which she is provided access to all female clothing and accessories, a single cell, separate showering and transportation, encouraged to feminize outside of her cell, and she receives ongoing mental health treatment in compliance with the WPATH standards) is certainly minimally adequate to treat her GID NOS. The Defendants' clinical decision not to incorporate breast pads into her treatment plan is not sufficiently harmful to Ms. Fuller so as to violate the Eighth Amendment and comports with the First Circuit's recent decision in by Kosilek v. Spencer, 774 F.3d 63, (1st Cir.2014).   "[W]here two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of our court to "second guess medical judgment" or to require that the DOC adopt the more compassionate of two adequate options." Id. at 90.

## II.    OBLIGATION OF COUNSEL TO CONFER

Pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 16.1(b), counsel for the parties conferred to discuss the matters herein through a telephone conference held on May 28, 2015.

## III.    SETTLEMENT PROPOSALS

Pursuant to Local Rule 16.1(c), on June 8, 2015, more than fourteen days prior to the Scheduling Conference, Ms. Fuller presented a written settlement proposal to the Defendants.

## IV.     PROPOSED PRETRIAL SCHEDULE

The Parties present the below schedule for consideration by the Court in issuing a

scheduling order:

| Event | Proposed Date |
|---|---|
| Complete Fact Discovery | December 15, 2015 |
| Plaintiff's Identification of Experts/Expert Reports | January 15, 2016 |
| Defendants' Identification of Experts/Expert Reports | March 1, 2016 |
| Complete Expert Discovery | March 15, 2016 |
| Opening Summary Judgment Brief | April 8, 2016 |
| Settlement Conference | May 6, 2016 |
| Pretrial Conference | To be set by the Court |
| Trial | To be set by the Court |

## V.     SCOPE OF DISCOVERY

Ms. Fuller intends to seek discovery on the following topics, including, but not limited to:

- Ms. Fuller's GID diagnosis and treatment plans;

- The qualifications of Ms. Fuller's treating physicians and clinicians;

- DOC's GID Clinical Supervision Group;

- DOC's GID Treatment Committee;

- Security protocols;

- Factors bearing on Ms. Fuller's claim for injunctive relief; and

- Factors bearing on Ms. Fuller's requests for reasonable costs and attorney's fees.

The DOC Defendants intend to seek discovery on the following topics including, but not

limited to:

- Ms. Fuller's claims of ongoing emotional distress and psychological harm;

- Ms. Fuller's claims of serious medical conditions and ongoing physical harm;

- Ms. Fuller's claims of harassment by DOC employees;

- Ms. Fuller's allegations in the complaint directed at the DOC defendants.

The MPCH Defendants intend to seek discovery on the following topics including but not limited to:

- Ms. Fuller's claims of severe emotional distress;

- Ms. Fuller's claims of ongoing serious medical conditions;

- Ms. Fuller's claims of a pattern of harassment by Medical Providers and Mental Health Staff;

- Ms. Fuller's allegations in the complaint directed at the MPCH Defendants.

## VI.    PHASED DISCOVERY

The parties do not believe that any phasing of discovery is appropriate.

## VII.    FORM OF DOCUMENT PRODUCTION

The parties have agreed on the form of document production.

## VIII.    LIMITS ON FACT DISCOVERY

The parties agree to modifications to the limits imposed by Local Rule 26.1(c) as described below.  The parties reserve all rights to seek expansion of these limits if necessary as the case progresses.  The parties agree that, unless modified by agreement of the parties or order of the Court, the following discovery limits shall apply:

| DISCOVERY LIMITS | |
| --- | --- |
| **Discovery Item** | **Agreement** |
| Deposition of Fact Witnesses | Plaintiff and each set of defendants (DOC Defendants and MPCH Defendants) shall each have a total of 10 depositions. |
| Deposition of Expert Witnesses | No expert deposition shall exceed 7 hours of on-record time on any day.  No expert deposition may last more than 1 day. |

| DISCOVERY LIMITS | |
|---|---|
| Interrogatories | Plaintiff may submit up to 25 interrogatories on the DOC Defendants and up to 25 interrogatories on the MPCH Defendants; DOC Defendants may submit up to 25 interrogatories on Plaintiff, and MPCH Defendants may submit up to 25 interrogatories on Plaintiff. |
| Requests for Production | Plaintiff may submit 2 separate sets of requests for production on DOC Defendants and 2 separate sets of requests for production on MPCH Defendants; DOC Defendants and MPCH Defendants each may submit 2 separate sets of requests for production on Plaintiff. |
| Requests for Admission | Plaintiff  may submit up to 25 requests for admission on DOC Defendants and up to 25 separate requests for admission on MPCH Defendants; DOC Defendants and MPCH Defendants each may submit up to 25 separate requests for admission on Plaintiff. |

## IX.   LIMITATIONS ON EXPERT DISCOVERY

The parties agree that communications among experts and between experts and counsel shall not be subject to discovery or inquiry at trial.  The parties further agree that notes, drafts, draft expert reports, or other preliminary work performed by or for any expert in connection with this litigation will not be subject to discovery or inquiry at trial, except to the extent it is used by an expert as a basis for their opinions.

## X.   TRIAL BY MAGISTRATE JUDGE

Pursuant to Local Rule 16.1(b)(3), the Parties have conferred regarding the possibility of trial by Magistrate Judge and at this time do not consent to trial by Magistrate Judge.

XI.   **AGENDA FOR MATTERS TO BE DISCUSSED AT SCHEDULING CONFERENCE**

Pursuant to Local Rule 16.1(b)(1), the parties respectfully submit the following agenda for discussion at the scheduling conference:

1. Ms. Fuller's pending Motion for Preliminary Injunction, filed November 17, 2014; and

2. Review of the parties' Joint Discovery Plan and Pretrial Schedule.

XII.  **CERTIFICATIONS**

The certifications required by Local Rule 16.1(d)(3) will be filed separately by each of the parties.

XIII.  **SERVICE PROTOCOL**

All documents required to be served shall be served by electronic mail on the following people:

**For Ms. Fuller:**

Felicia H. Ellsworth (felicia.ellsworth@wilmerhale.com)
Rebecca A. Bact (rebecca.bact@wilmerhale.com)
Allison Trzop (allison.trzop@wilmerhale.com)
Michelle Liszt Sandals (michelle.sandals@wilmerhale.com)

**For DOC Defendants:**

Richard C. McFarland (richard.mcfarland@massmail.state.ma.us)

**For MPCH Defendants:**

Melissa J. Garand (mgarand@kflawyers.com)
Victor J. Koufman (vkoufman@kflawyers.com)

CHARLENE-PAIGE FULLER
By her attorneys,
*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth (BBO #665232)
Rebecca Bact (BBO #682411)
Allison Trzop (BBO #688328)
Michelle Liszt Sandals (BBO #690642)
WILMER CUTLER PICKERING
      HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000 (t)
(617) 526-5000 (f)
felicia.ellsworth@wilmerhale.com

CAROL HIGGINS O'BRIEN, THOMAS E.
DICKHAUT, RAYMOND W. MARCHILLI,
CHRISTINE M. VERDINI, COLETTE M.
GOGUEN, and JOHN FLOWERS
By their attorneys,
NANCY ANKERS WHITE
Special Assistant Attorney General
*/s/ Richard C. McFarland*
Richard C. McFarland (BBO #542278)
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA 02202
(617) 727-3300 ext. 1132
rcmcfarland@doc.state.ma.us

SHARLENE SULLIVAN, MEAGHAN
DUPUIS, LINDA ALBOHN, JOEL
ANDRADE, ROBERT DIENER, MHM, INC.,
& MPCH,
By their attorneys,
*/s/ Melissa J. Garand*
Melissa Garand (BBO #554727)
Victor Koufman (BBO #545296)
Koufman & Frederick, LLP
145 Tremont Street 4th Floor
Boston, MA 02111
(617) 423-2212
mg@kflitigators.com
vk@kflitigators.com

Dated: June 12, 2015